FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

97 JUN -2 PM 1:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

CONNIE M. CALHOUN, )
    Plaintiff(s); )
     )
-vs.- ) No. CV-95-P-128-S
     )
CHARLES MARTIN, ACI GLASS, VVP )
AMERICA, BILL WHITE, )
    Defendant(s). )

ENTERED

JUN 3 1997

## OPINION

Two motions for summary judgment were considered at a prior motion docket. Defendants Bill White and VVP America, doing business as ACI Glass, filed a Motion for Summary Judgment on October 28, 1996. Defendant Charles Martin filed a Motion for Summary Judgment on January 10, 1997. For the reasons expressed below, these motions are due to be granted.

### Facts[1]

The plaintiff, Connie Calhoun, was hired by ACI Glass in June 1985. She left the company in 1988 to work for another company. In June 1989, after Bill White was hired as branch manager, Calhoun returned to ACI Glass. Upon her return, Calhoun informed White that she left ACI Glass because she felt she was subjected to a hostile work environment by an office manager, previous branch manager, and zone manager. Calhoun returned to work because White had been hired as the new branch manager in April 1989. Calhoun experienced no problems during her first two years after her return to ACI.

---

1. Recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

Calhoun states that the first incident of sexual harassment was in August 1993. Calhoun testifies that she was in defendant Charles Martin's office with a man from another company. Martin commented that Calhoun's green dress was his favorite because in it her nipples stuck out. Martin also stated that she should start unbuttoning the top ten buttons. Prior to this incident, Calhoun states that Martin had made a comment about Calhoun's nipples at the copy machine while a female co-employee was present. Calhoun also testifies that on August 20, 1993 Martin put his hands on Calhoun's shoulders and told her that they felt tight, and that she must not get a rubdown at home. Calhoun also states that on November 15, 1993 Martin said in Calhoun's presence that a customer "just wants her pussy licked."

Calhoun testified that more incidents occurred in 1994. Calhoun states that on February 7, 1994 Martin was late to work and commented when he came in that the state troopers had made him so mad that he "started to pull his dick out and piss on their fucking car." Calhoun also testifies that in April of 1994 Martin told her and another employee that when Warren and his wife from Standard Glass came down to Birmingham, Martin and his wife would "ride them around in a pickup truck with a mattress in the back so they can fuck." Calhoun states that Martin made several comments on April 29, 1994 when the office was taking inventory. Calhoun says that Martin made a comment to her about her husband waiting for her to get home so he could "get a little." Martin also said that "his ass was raw because he didn't wear any underwear" and that Calhoun must know how that felt. Martin also stated that he "was going to get home in time to stick [his wife's] tit in his mouth and suck it." Calhoun testifies that on May 13, 1994 Martin, upon looking at a picture of a co-worker's son's prom date, said "that girl sure does have big hooters." As well, Calhoun states that on May 16, 1994 Martin said that a customer must be

2

"creaming in his jeans" because he was given Braves baseball tickets.

Although Calhoun testifies in her deposition that the first incidents of harassment occurred in August of 1993, she also mentions several incidents that occurred before that time. Calhoun states that during her first employment with ACI Martin would come up behind female co-workers and "hunch them like dogs," and that he did this to her and to at least one other female co-worker. In addition, Calhoun testifies that in 1992 Martin told her before a glass convention that they could sleep together if her husband wouldn't go. Calhoun states as well that Martin had a habit of telling Calhoun and her co-employees what he was going to do to his wife when he went home. On one occasion, Calhoun says that Martin stated that he would go home and "screw [his wife] until her eyes fell out." In July of 1993, Calhoun states that Martin told a co-employee that men from LOF (another company) took Calhoun home one night.

Calhoun first complained to White in August 1993, regarding the comment about the green dress.[2] Calhoun again spoke to White in November 1993, but it is not clear that she complained at that time about any conduct by Martin. White told her that he would speak to Martin. White spoke to Martin and told him that his conduct would not be tolerated. In January, 1994 Calhoun complained to White about Martin's "pussy" comment. White told her that he had talked to Martin after this incident occurred and that if Martin said anything else she should come to him immediately. On April 22, 1994 Calhoun went to Rhodes Steger, the Division Human Resources Manager in Memphis, and complained about Martin's behavior. Steger said that he would get back to Calhoun, and that he would set up a meeting in Birmingham with Martin. Steger then

---

2. White testifies that Calhoun first complained to him in December of 1993. However, as previously stated, all facts are viewed in the light most favorable to the plaintiff.

3

called Calhoun on one or more occasions to determine if Martin had dome anything further to offend Calhoun. On May 17, Calhoun filed her EEOC charge. On May 24, Steger met with White and Martin, and later called Calhoun into the meeting. After the meeting and an internal investigation prompted by the EEOC charge, a written reprimand was placed in Martin's personnel file. As well, the company held training sessions on sexual harassment in the Birmingham office, and Martin followed a suggestion that he seek counseling through the employee assistance program. Calhoun has introduced no evidence that, since the date of the written reprimand, Martin has behaved inappropriately to her or has used offensive language, with the exception of one occasion in January, 1995, when he used the word "shit."

In her complaint, Calhoun states causes of action for Title VII sexual discrimination, sexual harassment, retaliation, and constructive discharge by White and VVP America d/b/s ACI Glass and invasion of privacy and intentional infliction of emotional distress by all defendants. White and VVP America d/b/s ACI Glass argue that individuals cannot be liable under Title VII, that the company is not liable because it took prompt remedial action, that Calhoun has not stated a prima facie case of retaliation, and that they are not liable for any tortious acts of Martin. Martin argues that his conduct does not rise to the level of intentional infliction of emotional distress or of invasion of privacy.

## Analysis

I.    Motion for Summary Judgment by White and VVP America d/b/s ACI Glass

The Motion for Summary Judgment as to claims against White under Title VII is due to be granted because individuals are not subject to suit under Title VII. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). The Motion for Summary Judgment as to claims against

4

VVP America d/b/a ACI Glass for sexual harassment under Title VII is due to be granted because they took prompt action to remedy the harassment.[3] An employer is not liable if the employer took "prompt and appropriate remedial action in response to the harassment." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989). As well, an employer is liable only if "higher management" knew or should have known about the harassment in question. *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 753-54 (11th Cir. 1996). In this case, after Calhoun notified him that there was a problem, White spoke with Martin and told him that his behavior was unacceptable. Subsequently, after Calhoun complained to Steger, a meeting was held with White, Martin, and Calhoun at which Martin was reprimanded, Martin followed a suggestion to seek counseling, and a written reprimand was later placed in Martin's personnel file. Calhoun has introduced no evidence that Martin engaged in inappropriate behavior after he was reprimanded.

The Motion for Summary Judgment as to claims against VVP America d/b/a ACI Glass for retaliation under Title VII[4] is due to be granted because Calhoun has not established a prima facie case of retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate that she participated in protected conduct, that the employer took an adverse employment action, and that a causal connection exists between the two. *Hamm v. Members of Board of Regents of State of Florida*, 708 F.2d 647, 654 (11th Cir. 1983). Calhoun states that she was given additional job responsibilities. However, Calhoun does not

---

3. The court notes that the defendants' Motion for Summary Judgment is also due to be granted as to Calhoun's claim of sexual harassment because Martin's conduct is not so severe or pervasive as to alter the terms and conditions of Calhoun's employment.

4. Calhoun has abandoned the sexual discrimination and constructive discharge claims stated in her complaint.

point to evidence that would indicate when she was given these additional responsibilities, or that there was any causal connection between her complaints about Martin's behavior and her changed job responsibilities. Therefore, even if increased job responsibilities constitute an adverse employment action, Calhoun has not established a causal connection between her complaints and the adverse employment action and has thus not established a prima facie case of retaliation.

The Motion for Summary Judgment as to the state law claims against White and VVP America d/b/a ACI Glass is due to be granted because, as stated below, Martin is due to be granted summary judgment on Calhoun's claims of invasion of privacy and intentional infliction of emotional distress, and thus White, VVP America, and ACI Glass cannot be vicariously liable.

II.     Motion for Summary Judgment by Martin

To state a claim for invasion of privacy, a plaintiff must demonstrate "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 708-09 (Ala. 1983). Calhoun has not introduced sufficient evidence that Martin intruded into her private activities in such a way as to cause outrage and humiliation. Although Calhoun alleges that Martin subjected her to unwelcome touchings and offensive language, she does not allege that he intruded into her private life to the extent described in *Phillips*. Therefore, Martin is due to be granted summary judgment on Calhoun's claim of invasion of privacy.

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was intentional or reckless, that it was extreme and outrageous, and that it caused emotional distress so severe that no reasonable person could be expected to endure it. *Jones v. Crawford & Co.*, 1997 WL 112719, *3 (Ala. 1997). Calhoun has not introduced

6

sufficient evidence to demonstrate either that Martin acted intentionally or recklessly or that she his conduct was sufficiently extreme and outrageous. Therefore, Martin is due to be granted summary judgment on Calhoun's claim of intentional infliction of emotional distress.

Dated: May 2, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. William B. Lloyd
    Ms. Sue A. Willis-Green
    Mr. William L. Sossaman
    Ms. Carol Ann Smith
    Ms. Jennifer M. Busby